UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

DANIEL GREGORIE, in his individual capacity and as Successor In Interest to Jessica Gregorie, deceased, and MARGARET GREGORIE, in her individual capacity and as Successor In Interest to Jessica Gregorie, deceased,

    Plaintiffs,

  v.

ALPINE MEADOWS SKI CORPORATION, a California Corporation and POWDER CORP., a Delaware Corporation,

    Defendants.

_____/

NO. CIV. S-08-259 LKK/DAD

O R D E R

    Plaintiffs commenced this suit in February, 2008, asserting various state law claims against defendants, the Alpine Meadows Ski Corporation ("Alpine Meadows") and Powdr Corporation, relating to the death of their daughter at Alpine Meadows' ski area. According to the court's Scheduling Orders, the deadline for expert disclosures was April 14, 2009. Pending before the court is

1

defendant's motion to strike the late-filed disclosure of an expert identified by plaintiffs as a rebuttal expert, Dr. Mark Sanders. The court resolves the motion on the papers and for the reasons stated herein, grants the motion.

## I. BACKGROUND

This suit commenced in February 2008 and the court issued a Scheduling Order in April 2008. The order provides,

> All discovery . . . shall be conducted as to be completed by April 14, 2009. The word "completed" means that all discovery shall have been conducted so that all depositions have been taken and any disputes relative to discovery shall have been resolved by appropriate order if necessary . . . . [A]ll counsel are to designate in writing and file with the court and serve upon all other parties a final list of the names of all experts that they propose to tender at trial not later than sixty (60) days before the close of discovery herein established. At the time of designation, all experts shall submit a written report. . . . All experts so designated are to be fully prepared to render an informed opinion at the time of designation so that they may fully participate in any deposition taken by the opposing party. . . . An expert witness not appearing on said lists will not be permitted to testify unless the party offering the witness demonstrates: (a) that the necessity of the witness could not have been reasonably anticipated at the time the lists were exchanged; (b) the court and opposing counsel were promptly notified upon discovery of the witness; and (c) that the witness was promptly proffered for deposition.

Order, April 15, 2008 at 5-6. Discovery motions were to be brought so as to be heard not later than March 15, 2009. Id. The Scheduling Order was modified, per the parties' stipulation, on March 30, 2009. The discovery deadline and expert disclosure deadline were left unchanged, except that defendants were granted until June 15, 2009 to complete non-expert discovery. The deadline for plaintiffs to have discovery motions heard remained unchanged, but defendants

2

were granted an extension to May 22, 2009 for their discovery motions to be heard. The Pretrial Conference and trial dates were continued to November 16, 2009 and February 17, 2010, respectively.

The parties exchanged their expert disclosures on February 13, 2009. Declaration of Jill Penwarden In Support of Defs.' Mot. to Strike ("Penwarden Decl.") ¶ 2; see also Declaration of Alisha Louie In Support of Pls.' Opp'n to Defs.' Mot. to Strike ("Louie Decl.") ¶ 2. Among these was the report of defendant's expert Chris Stethem, whom plaintiffs deposed on April 7, 2009. Pls.' Disclosure of Rebuttal Expert ¶¶ 1-2.

Stethem's report stated that its purpose was to "provide an expert opinion on the risk management and snow conditions for the skiing operations in relation to this accident." Penwarden Decl. Ex. C (Stethem Report) at 2. The report is eleven pages long, most of which consists of Stethem's recitation of the facts of the accident and list of the materials he reviewed in preparing his report, and sets forth seven conclusions. Id. at 5. The seventh is, "It is not the usual practice to mark all potentially hazardous terrain features inside ski area boundaries in advanced or expert alpine terrain, nor is it the usual practice to mark such features beyond the ski area boundary." Id.

Defendants also designated as an expert Dr. Erin Harley, whose opinion related to "human factors and human performance issues . . . [including] visibility, conspicuity, reaction time, eyewitness memory, hindsight bias, attention, and warning design and compliance." Penwarden Decl. Ex. B (Harley Report) at 1. Her report

1 focused largely on the effectiveness of the warning signs at the
2 defendants' ski area. Id. at 6-9.

3 Plaintiffs did not disclose an expert specifically on the
4 issue of "human factors," including warning signs, but did
5 designate Stanley Gale as an expert on ski area operations and
6 submitted his report. Pls.' Disclosure of Expert Testimony, Feb.
7 13, 2009 at 1; see also Penwarden Decl. Ex. E (Gale Report). Gale
8 was described by plaintiffs as an expert on "Duties and standards
9 of care for snow-sports industry; Adequacy of maintenance of ski
10 resort including ski trails, ski trail maps, boundary management,
11 . . . signage and warnings, safeguards and ski patrol; Ski patrol
12 and mountain management standards, inspections, and reasonable and
13 feasible ski industry safety and operating standards." Pls.'
14 Disclosure of Expert Testimony, Feb. 13, 2009 at 1.

15 Plaintiffs deposed defendants' expert Chris Stethem on April
16 7, 2009. Louie Decl. ¶ 4. According to plaintiffs, in his
17 deposition Stethem repeatedly referred to placement of warning
18 signs in the "core" areas of a ski resort, which plaintiffs contend
19 "was not rendered or alluded to in [his] initial report." Id.; see
20 also id. Ex. B (Stethem Depo.). On May 5, 2009, plaintiffs
21 designated Dr. Mark Sanders as a rebuttal expert. Id. ¶ 5; see also
22 Pls.' Disclosure of Rebuttal Expert, May 5, 2009 ¶ 2. Sanders'
23 report is entitled "Human Factors Report" and begins, in relevant
24 part,

25    Mr. Stethem testified that most ski report warnings are
      concentrated at high traffic areas or lift terminals,
26    what he called "core" areas. . . . I have no opinion as

4

> to whether or not this is custom and practice in the ski resort industry. However, from a human factors perspective, there are several problems with placing many warning signs in one area, far from the hazards about which they are intended to warn.

Penwarden Decl. Ex. A (Sanders Report) at 1. His report then goes on to identify these "human factors" problems. Id. at 1-2.

According to defendants, when plaintiffs made their expert disclosures and defendants observed that there was no human factors expert among them, they withdrew Harley as an expert and re-designated her as a non-testifying consultant. Penwarden Decl. ¶ 10. She was never deposed, id., and is currently on maternity leave until October 2009. Reply Decl. of Jill Penwarden in Support of Defs.' Mot. to Strike ("Reply Penwarden Decl.") ¶ 3.

In their instant motion, defendants move to strike plaintiff's disclosure of Sanders as a "rebuttal expert."

## II. ANALYSIS

Defendants contend that plaintiffs' disclosure of Dr. Sanders as an expert is untimely under the court's Scheduling Order and the Federal Rules. Plaintiffs, on the other hand, argue that the disclosure is timely under the Federal Rules and consistent with the Scheduling Order.

Federal Rule of Civil Procedure 26(a)(2)(C) provides that, in the absence of a contrary court order, a party may disclose the identity of an expert whose testimony is intended only to contradict or rebut evidence offered by another party's expert thirty days after disclosure of the other party's expert. As defendants correctly observe, the Scheduling Order served to alter

5

1  the deadline set forth by Rule 26 by requiring that "all" experts
2  be disclosed by a certain date. Despite plaintiffs' apparent
3  confusion, "all" is not ambiguous and encompasses rebuttal experts.
4  The Scheduling Order also provides for a narrow exception to this
5  deadline, allowing that an expert may be disclosed beyond the
6  deadline if, *inter alia*, "the necessity of the witness could not
7  have been reasonably anticipated at the time the lists were
8  exchanged." Order, April 15, 2008 at 5-6.

9  Here, plaintiffs have not met this standard so as to justify
10 permitting Dr. Sanders to testify notwithstanding his omission from
11 the plaintiffs' timely expert list. Plaintiffs characterize Sanders
12 as offering a rebuttal opinion to Stethem, whose testimony
13 plaintiffs contend, expounded on his expert opinions in an
14 unanticipated way. This is not persuasive. Stethem's testimony
15 concerns the industry standard for, among other things, placement
16 of warning signs. See Penwarden Decl. Ex. C (Stethem Report), Ex.
17 D (Stethem Depo.); Louie Decl. Ex. B (Stethem Depo.). Sanders'
18 report admittedly does not address industry standards, but rather
19 what warning measures are appropriate for defendants to have
20 utilized from a human factors perspective. See Penwarden Decl. Ex.
21 A (Sanders Report) at 1. The fact that Stethem had used the term
22 "core" to refer to certain areas of a ski resort does not, as
23 plaintiffs suggest, render the contents of his deposition
24 unanticipated so as to justify permitting Sanders to testify.
25 Sanders' opinion merely appears to use Stethem's language as a
26 springboard from which to opine about human factors problems in

6

1   defendants' sign placement. There is nothing that suggests to the
2   court that this opinion could not have been developed based on the
3   discovery that had been available at the time expert disclosures
4   were required to have been made. Accordingly, plaintiffs'
5   disclosure of Sanders was untimely under the court's Scheduling
6   Order.
7      Plaintiffs argue that, even so, the court should permit
8   Sanders to testify because no prejudice to defendants would result
9   or, alternatively, should permit defendants to respond to Sanders'
10  untimely report. The court cannot agree.
11     The Scheduling Order clearly provides that experts who are not
12  timely disclosed may not testify; this order was issued almost a
13  year prior to the deadline for expert disclosures, allowing
14  plaintiffs ample time to prepare. To the extent that the possible
15  prejudice to defendants is relevant in considering whether to
16  permit Sanders to testify, see Amarel v. Connell, 102 F.3d 1494,
17  1515-16 (9th Cir. 1997), defendants have demonstrated it. Sanders'
18  report concerns human factors analysis of the ski resort, see
19  Penwarden Decl. Ex. C (Stethem Report) (titled "Human Factors
20  Report Concerning the Case of Gregorie v. Alpine Meadows"), and
21  defendants withdrew their human factors expert as a result of
22  plaintiffs' apparent non-reliance on a similar expert per February
23  2009 expert disclosures. Defendants have now tendered evidence that
24  their human factors expert is unavailable until mid-October,
25  approximately a month before the Pretrial Conference. See Penwarden
26  Decl. ¶ 10. Therefore, permitting Sanders to testify would unfairly

prejudice defendants, who would be required to make their human factors expert available for deposition within a very small window of time. Such prejudice is unfair and certainly has not been demonstrated to be merited by the circumstances. See <u>Amarel</u>, 102 F.3d at 1515-16.

### III. CONCLUSION

Accordingly, defendants' motion to strike plaintiffs' late-disclosed expert designation and report is GRANTED.

IT IS SO ORDERED.

DATED: July 2, 2009.

_____
LAWRENCE K. KARLTON
SENIOR JUDGE
UNITED STATES DISTRICT COURT